1170812 Barge Verzinski v. Barge Terminal Trucking Company Counseling may proceed. You may proceed. Good morning, may it please the court and counsel, I'm Charles Cohen on behalf of the plaintiff's petitioner Brian Zerzinski. We're here today of course on review of the decision of the circuit court and of the commission with regard to Mr. Zerzinski's claim of injury dating back to December of 2007 when he was injured while on the employ of Barge Terminal Trucking with regard to a roofing job in Lake Forest, Illinois. Specifically, as he testified and testified without opposition as to how he was injured during a roofing job where his job as the truck driver was to assist the crane operator basically after the crane box gets loaded from the chute at the rear of the truck. I think we are aware of the facts and maybe you're technically correct, he testified without opposition. However, wasn't he very substantially impeached by the medical records that contradicted his version of what happened? That is my opinion is the medical records regarding the first two visits do not really impeach him that much. The first was an emergency room visit. That much? That much? Not really. Either are or you aren't impeached? I don't see that he was impeached. The first record is an emergency room record. The guy comes in a lot of pain on a Sunday night into the emergency room in Waukegan and they say no accident. Whether that's even clearly from his words or what he said there, I don't know. Wait a minute. They said, the claimant says right leg pain started last Thursday, January 3rd with no known injury. So you're suggesting that they simply, the nurse made that up? They didn't make it up. They may have been in error. They may have misinterpreted what he had to say. Nobody is accusing anybody of willfully misrepresenting anything. Let's discount the nurse. Let's move on to the emergency room physician who writes in his notes, claimant's symptoms began five days ago and came on gradually. Does that sound like a specific accident? Gradually may or may not. Yes, it can become an accident. I mean, that's an injury where a bomb's standing, and sometimes you don't feel anything immediately on the event, and then it gets bad, worse and worse. This is exactly what happened to this guy. That was his live testimony, and also we put in the testimony from a civil case trial of Mr. Ahonen. His son-in-law was with him in the home and saw that the pain was getting worse in the home, and he was trying to work during this time period. He asked the bosses. He told the bosses. He testified. He told the bosses. Mr. Bobby Meier, Tommy Meier were his bosses. What happened? Can I do a lot of work? And they gave him salt hauling jobs because he doesn't have to go out and assist anybody with pushing heavy stuff, doing hauling salt. They pour the salt into the truck. Let me ask you this. One final note. Why did he tell the doctor, the doctor has it in his notes, that Klayman said he denied any history of recent trauma? Why would Klayman do that if he was injured at work? Well, his live testimony is he didn't do that, and what happened actually in the emergency room, all I can say is this event isn't like an impact occurrence. His live testimony, his testimony was to the nature of he was pushing this crane bucket, which was not completely empty like it was supposed to be, and he slips but does not fall. He distrains himself, and he keeps going, and he continues doing his work for the balance of the day, but that strain is his perception of what happened. There was no fall event. He kind of slipped a bit but didn't fall to the ground and didn't have an impact against his body. He was straining himself while pushing this crane bucket, which was supposed to be empty of gravel but wasn't. Well, here's the thing I'd like you to address, and I understand your argument, and you're a vigorous advocate for Klayman. I mean, Klayman testified the medical records could have been wrong or misinterpreted, but the commission obviously found them, as you know, to be more reliable than the Klayman's later testimony. So what do we do with it? Can we say you're right, the commission is wrong? Well, the thing is there's more to this than that. He gave the full description of his injury to the first doctor who I think actually asked for a full description of his injury, which was Dr. Engelhardt, which was roughly a month after the occurrence. The first occurrence, guys, is considerable pain in an emergency room. What he said, how much he said, how much he should have said, I can't say. But one of the important points here regarding this is nobody noticed or cared how much he said in the emergency room until almost three years later when apparently Dr. Anderson pointed this out in his first report in September of 2010. The occurrence took place in December of 2007. And the first time, the pain in the TTD went away, it's not working, and everything up to that point. And Dr. Anderson, based on what I call a lay opinion, second guesses what he said in the emergency room. My reason I say it's a lay opinion is there's nothing about one's medical education as an orthopedist that really informs us of what that could have, should have, or did say in an emergency room. It was a lot of pain on a Sunday night. I'm sure you make an argument for the commission, but don't the records sort of speak for themselves? I mean, if the medical records say this, then that's what they say. Yeah, well, the emergency room record does not reflect a work-related injury. That is, I can't make that go away. However, he does say he believes it occurred the next day when he goes to see the family doctor, Dr. Paxton. And whether he gave any details or not, Dr. Paxton did not record. And that's all I can say. To the extent this guy's a bad historian, and I can't help that, but all I know is he gave consistent histories at every point thereafter. And nobody questioned the history or said you didn't report in the emergency room for almost three years. And then they're trying to say, well, you should have taken the deposition of Dr. Brown, the emergency room doctor. Do you really think that sometime in late 2010 or later that he's going to remember some guy who came in on a Sunday night? Can you just go? Well, for the sake of the argument, let's suppose we exceed the argument that he's a bad historian and that the contemporaneous medical records should not carry the day. What did Dr. Anderson have to say, even granted that there was some kind of an incident? What did Dr. Anderson have to say? Well, in Dr. Anderson's opinion, and he contradicted himself, first of all, he said- Well, before we get to the contradiction part, what did he have to say? He said that this was preexisting, and that's where it really flies against the manifest way of the evidence, because there's not one shred of evidence that he had- He said it was a deterioration of the evidence. Everybody has progressed it by the time you get to the- But he said it was not attributable to the alleged workplace accident. That was his bottom line opinion, wasn't it? I'm sorry? In Dr. Anderson's opinion, didn't he state that the condition of the claimant's low back and right leg was not due to the alleged workplace accident? That's his bottom line opinion, right? He's contradicted himself. One point of his deposition is to say, I don't know if there was an accident, and then at another point he says there wasn't an accident. In two different places in the same deposition, he says, I don't know if there was an accident, and that can't be definite as one way or the other. He said, I don't know. They said, no, there wasn't. And the point is, he's trying to say it's all from something preexisting, but no symptoms of this severity ever presented themselves. No symptoms of severity sufficient to stop him from working for one day ever occurred, and he passed DOT physicals. I mean, if this guy was having bad back trouble, he wouldn't have passed DOT physicals, and he wouldn't have gone to doctors. He never did. Specifically, what evidence, and succinctly, carries the day for your side? You've attempted to poke holes in all the evidence on the defendant's side. Tell us succinctly, in summary form, what evidence carries the day for your side? His live testimony is the most important thing that's unrebutted, and I point out that he says, I got hurt on the job in this way, and I reported it to Bobby and Tommy Edmeyer, who gave me light work to install during the following week. This was around the Christmas time of the end of 2007. And I cited the law that uses use-and-sue cases under 5.01 jury instructions and the case law under those that say that when you have, when you're confronted with evidence like this, and you have people under your control that you could put in to not put those people in to testify, creates a, the instruction uses the word inference, but the case law underlying it uses the word presumption that the testimony of your people would be adverse. And I feel under these circumstances, this guy says, I got hurt this way, I told the bosses about it, and the bosses don't come in and say, even though he didn't tell me about it, he had a young wife, they even paid him TTD for three, I don't know, for up to close to three years. And... Why weren't they equally available to your client? You could have subpoenaed them. No, I couldn't. What would they have said to me? They weren't equally available to my client. That's not the law. Yes, it is the law, counsel. It's very clear there is no presumption that I have a duty bound to bring these men in. You're missing the point. One of the elements, if you'll excuse me, the witness was not equally available to the party in whose favor the inference is drawn. He's not equally available. One of the elements. Why, you couldn't subpoena him? Why should we? We testified, we told the truth. Excuse me. You have the burden of proof. Why should you? To prove your case. That's why you should. There is no requirement under the Lennox case and no presumption under 5.01 for a guy who works for the other side. That is clearly what the Lennox case, Kearns v. Lennox, says. We are not obligated to call the other guy. Now, the reason the other guy would be called is if he had something to say that was to the contrary to what Brian had to say. If Brian says something and they say, oh, my God, that's not true, that's when they have to come in. And if they don't come in, that's the presumption is against them. Let me ask you this. Maybe we're misinterpreting what you're saying. What do you make of this well-established element of the missing witness requirement so that you get the benefit of this presumption? The reason is he says something. Hang on a second. The witness, one of the foundational elements is, you can't dispute it, is, quote-unquote, the witness was not equally available to the party in whose favor the inference is to be drawn. That's you. Okay? That's one of the elements. He is not. You have no obligation to call him, but if you want to get the benefit of the missing witness rule presumption, it has to be shown that he was not equally available to you. You just can't walk in and say he works for the employer, we win the case because we have this presumption. It doesn't matter whether he's available to us. It doesn't matter if we can subpoena him. It's just we don't have to do anything. That's your position? That is the law. Oh, really? Counsel, you are simply wrong. You are dead wrong. If he could have subpoenaed them through the use of exercise of diligence, then the presumption doesn't arise. And you're the one that had to prove notice to the employer. And that was your notice to the employer. We determined that Mr. Russell was a defendant-employee and under the control of the defendant as its employee and was therefore not equally available to the plaintiff. That's what Kearns v. Lange's machine says. The law is he wasn't equally available to the plaintiff, or in this case, the petitioner. This is what Kearns v. Lange's machine says. To say I don't see that there is any contrary law or saying that he is equally available to the plaintiff. How about Chaffin v. Chicago and Northwestern Transportation, which was a Supreme Court case that laid down the elements, one of which he wasn't equally available to you. Now, you had a right to subpoena him under Section 730.50 of the Industrial Commission's rules. You could have done it. You could have taken their deposition. You didn't do it. I don't see that the law requires me to explain that. I've earned your argument that you don't think you and I disagree on that point. All I know is what this Kearns case says. Okay, so just so I understand your argument. You're arguing when you get the benefit of the presumption and the claimant's testimony, it was clear and concise and unimpeached, therefore, that's your argument, correct? He is unimpeached, but I want to go further with regard to some of the things. Well, you can do that in reply. Okay. Because your time is up. Okay. Thank you. Counsel, you may respond. Good morning, Justices. May it please the Court. Counsel, my name is Colin Mills. I represent the defendant, Athalene, in this matter as far as criminal trucking. The only issue on appeal before this Court today is accident. Clearly, our position is that there is sufficient evidence in the record to support the commission's finding and that the plaintiff simply failed to meet his burden of proof in establishing that an accident arose out of and in the course of his employment on the alleged accident date of December 27 of 2007. Ultimately, the commission's finding was based on lack of credibility and lack thereof by the plaintiff. As this Court has stated many times, that's in the commission's discretion to do that, to determine the way in the testimony to resolve the conflicting evidence. What was the basis for finding lack of credibility? I think what the commission said is that the plaintiff failed to provide a credible and consistent history of his accident. And he was impeached by all the medical records. That's correct. And I think it's clear that this Court has an understanding of what the medical records say. I will point out, because I believe only the initial ER record of January 7th was discussed when the appellant was before you, but not only was the emergency room record void of any work-related accident description, so was the visit the very next day to a different physician at a different facility. And we didn't hear from any of these doctors other than what's in their certified records that's in the court records. So I think that's what we have to go by. And I don't think it's proper at all to infer that something's missing or they didn't mean that or the nurse was tired or, you know, whatever my opponent would like to argue. I think that he was clearly impeached by the initial records that said on more than one occasion that there was no distinct accident that caused the symptoms. It came on the graduate, the onset date didn't match up, all sorts of things that were wrong. You know, I would also like to respond a little bit to his argument about the lack of testimony by the admirers. My opponent has said... Well, what do you understand the law to be on presumption? Well, I think first there's... Missing witness. He testified, well, the counselor said in his brief before this court, before the commission, that his client testified that he told his bosses that he had a work-related accident. And I think the record is clear that he didn't testify that he told them he had a work-related accident. He testified to them that he asked to be kept off labor-intense jobs with really no basis or reason as to why he did it, just sort of stopped there. So they weren't called in because there was truly nothing to rebut as it goes to the issue of whether or not there was a work-related accident. But as I pointed out in my brief, I think that if plaintiff is trying to meet his burden of proof in establishing his case, that he's got that subpoena power to try and bring them in and he thinks they have testimony that's going to help him, and that did not happen. Can you subpoena the plaintiff? I've never had the opportunity or need to do it because I assume they're going to testify because it's his burden of proof and his testimony is necessary for his case. If the claimant is represented by an attorney, are you able to subpoena directly to the plaintiff? I would say I would probably send it to his counsel if he was represented. You would, but I'm sorry, you couldn't. I suppose you could, but are you ethically permitted? I don't think he'd be permitted. I wouldn't want to test it. I would send it to his counselor. So isn't that a factor in this? Well, he would send it to me if that's the issue. But at no point did he ever try or, you know, never try to take an evidence deposition. Wait a minute. Why would you not be ethically permitted to subpoena a party for a deposition? You can't talk to them. As a party to the case, I would just say that. No, no, I understand what you would normally do, but where is the ethical prohibition against subpoenaing a party for an evidence deposition? I don't know. There is not. There isn't. As long as you don't talk to them and as long as you notify their attorney that there's going to be a deposition, there's no ethical violation. You just can't talk to them. Have you ever seen that in your career? I'm sorry? Have you ever seen that in your career? Which part? A representative party being subpoenaed by the opposing side. Yes. Okay. I have. So as far as that goes with the Ed Meyers, I believe if he felt like they were going to give something to him for his case, he could have called them in. He didn't do that. I think that the evidence clearly supports the commission's decision that the burden of proof was not met in this case. And that they shouldn't be disturbed. Thank you. Was there any request on the part of the claimant to the arbitrator that an adverse inference be drawn? Not to my knowledge. Okay. Thank you. Thank you, Counselor. Counselor may reply. Can you point to anything in the record where you asked the arbitrator to draw the adverse inference? No. Unless it was, I don't remember if anything was put into a proposed decision, but nothing written on the record before the arbitrator would have asked for that. No. But I know that that argument was definitely made before the panel, before the commission panel. If you don't raise it at the time of the hearing, that would be forfeited? I don't know whether that's necessary to be raised. Usually the way it works is that there's proposed decisions presented to the arbitrator and then he makes a decision based on the proposed decisions that are presented or drafts his own or derives maybe to some degree from the proposed decision. Well, does the proposed decision have that in it? You know, I just don't remember at this point in time because the proposed decisions don't make it into the record. When you propose a decision and an arbitrator makes a decision, then that's what gets in the record. Anyhow, if we're asking about taking the deposition of my client and before the issue of taking the depositions of opponents, I have never in my knowledge of workers' compractors seen a party deposed. The only depositions I see in customary and normal workers' compractors are depositions of treaters and experts and medical treaters and medical experts. Were Bobby and Tommy Elmer parties? What? I'm sorry? Were Bobby and Tommy Elmer parties to this clause? Yeah, that's what I'm saying. They weren't parties. The party was Barge Terminal Trucking Incorporated. Barge Terminal Trucking Incorporated, of which they are officers. Yeah, that's true. But it's saying a difference in my mind. Sure, wouldn't it? Taking a deposition of the owner of the company and the owner and the employer does not have to take a deposition. Well, you haven't. Does it mean that there's a prohibition because you haven't done it? Does that mean there's a legal prohibition just because you haven't done it? Well, there's a certain custom and practice, but that's the point I'm trying to make.  And whenever employer people come in, it's usually a surprise. You were here? I just saw. But I want to get to one of the points of the text on my guy's credibility. From the arbitrator, he contradicted his own evidentiary ruling to say in his written decision that my guy testified that the records were falsified. He never used that word. That was a word that was used by Mr. Mills in question, and we subjected, and arbitrator felt he only sustained the objection, and then in his written decision says that my guy said the records were falsified. He never said they were falsified. Every time the records contradict, the recollection of the guy that it's falsified. That's not falsified. And the objection was sustained, and he used the same words that Mr. Mills used in the sustained objection question to attack my client. And even worse was the attack on Mr. Ahone in the silo that was in the house. First of all, he tries to say he was an expert because he later became a physical therapist and was studied to be one at the time. But more importantly, he says that he's troubled by the fact that he didn't ask Mr. Ahone, did Mr. Mills, did Mr. Straczynski tell you how it happened? Well, Mr. Ahone's testimony came in from the circuit court case against Barking and Roofing, which was the contractor that Barge was working for at the time. And we did ask that question in the circuit court case, and Judge Michael Fusingley County sustained the defense objection. No, you can't ask that. It's hearsay. And then Arbitrator Falsione is troubled because we didn't bring that in. No, we didn't bring it in because Judge Fuse said we can't bring it in. We're barred. And so he's attacking us for not getting into the evidence, something that Judge Fuse said. We can't get into evidence. And as I said, Mr. Ahone's testimony came in. Is there some type of a razor cut or estoppel effect to this Lake County ruling? What does one have to do with the other? We can't bring this here. What happened to hearsay here too? It's hearsay. Can we get past it? So did this witness here talk about Mr. what's-his-name again? He was his son-in-law who was in the house. He testified he had some physical problems. Right, but he didn't know anything. He wasn't at the work site. He didn't know how the accident happened, did he? No, but the point was that the arbitrator was troubled because nobody asked Mr. Straczynski to tell you how he got hurt. I don't think that's the biggest point of the case. It's not the biggest point of the case. But this arbitrator's using attacks on one of the other tribunals he made, one of the other tribunals ruling on testimony that was brought up first before a circuit judge, a circuit judge, and he's attacking the guy on false bases. I mean, doesn't this tell you that this arbitrator is straining to find this guy not credible? Okay, counsel, your time is up. And thank you both, counsel, for your arguments in this matter. It will be taken under advisement in a written dispositional issue.